**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                      :
                                                  :
        Plaintiff,                            :   Civil Action No. 1:21-cv-1948
                                                  :
v.                                                :
                                                  :   **COMPLAINT FOR VIOLATIONS OF**
CORELOGIC, INC., FRANK MARTELL, W.                :   **SECTIONS 14(a) AND 20(a) OF THE**
STEVE ALBRECHT, DOUGLAS C.                        :   **SECURITIES EXCHANGE ACT OF**
CURLING, JOHN C. DORMAN, WENDY                    :   **1934**
LANE, PAUL F. FOLINO, CLAUDIA FAN                 :
MUNCE, PAMELA H. PATENAUDE,                       :   **JURY TRIAL DEMANDED**
VIKRANT RAINA, J. MICHAEL                         :
SHEPHERD, JAYNIE MILLER                           :
STUDENMUND, and HENRY W. "JAY"                    :
WINSHIP,                                          :
                                                  :
        Defendants.                           :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against CoreLogic, Inc. ("CoreLogic or the "Company") and the members CoreLogic board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of CoreLogic by Stone Point Capital and Insight Partners, two private equity firms incorporated in the Cayman Islands and Delaware respectively, and their affiliates ("Acquisition Group").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 1, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Celestial-Saturn Merger Sub Inc. ("Merger Sub") will merge with and into CoreLogic with CoreLogic surviving the merger and becoming a wholly owned subsidiary of Celestial-Saturn Parent Inc. ("Parent") (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each CoreLogic common share issued and outstanding will be converted into the right to receive $80.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked CoreLogic stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Evercore Group L.L.C. ("Evercore") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CoreLogic stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Insight Partners is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of CoreLogic common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Frank Martell has served as a member of the Board since 2017 and is the Company's President and Chief Executive Officer.

11. Individual Defendant W. Steve Albrecht has served as a member of the Board since November 2020.

12. Individual Defendant Douglas C. Curling has served as a member of the Board since 2012.

13. Individual Defendant John C. Dorman has served as a member of the Board since 2012.

14. Individual Defendant Wendy Lane has served as a member of the Board since November 2020.

15. Individual Defendant Paul F. Folino has served as a member of the Board since 2011 and is the Chairman of the Board.

16. Individual Defendant Claudia Fan Munce has served as a member of the Board since 2017.

17. Individual Defendant Pamela H. Patenaude has served as a member of the Board since June 2020.

18. Individual Defendant Vikrant Raina has served as a member of the Board since 2017.

19. Individual Defendant J. Michael Shepherd has served as a member of the Board since 2019.

20. Individual Defendant Jaynie Miller Studenmund has served as a member of the Board since 2012.

21. Individual Defendant Henry W. "Jay" Winship has served as a member of the Board since November 2020.

22. Defendant CoreLogic is incorporated in Delaware and maintains its principal offices at 40 Pacifica, Suite 900, Irvine, California. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "CLGX."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Individual Defendants" or the "Board."

24. The defendants identified in paragraphs 10-22 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

25. CoreLogic, together with its subsidiaries, provides property information, insight, analytics, and data-enabled solutions in North America, Western Europe, and the Asia Pacific. The company operates in two segments, Property Intelligence & Risk Management Solutions (PIRM) and Underwriting & Workflow Solutions (UWS). The PIRM segment combines property information, mortgage information, and consumer information to deliver housing market and property-level insights, predictive analytics, and risk management capabilities. It also offers proprietary technology and software platforms to access, automate, or track the information and assist its clients with decision-making and compliance tools in the real estate industry, insurance industry, and the single and multifamily industry. This segment primarily serves commercial banks, mortgage lenders and brokers, investment banks, fixed-income investors, real estate agents, MLS companies, property and casualty insurance companies, title insurance companies, government agencies, and government-sponsored enterprises. The UWS segment combines property, mortgage, and consumer information to provide comprehensive mortgage origination and monitoring solutions, including underwriting-related solutions, and data-enabled valuations and appraisals. This segment also provides proprietary technology and software platforms to access, automate, or track the information and assist its clients with vetting and onboarding prospects, and meeting compliance regulations, as well as understanding, evaluating, and monitoring property values. It primarily serves mortgage lenders and servicers, mortgage brokers,

credit unions, commercial banks, fixed-income investors, government agencies, and property and casualty insurance companies. The Company was formerly known as The First American Corporation and changed its name to CoreLogic, Inc. in June 2010. CoreLogic was incorporated in 1894 and is headquartered in Irvine, California.

26. On February 4, 2021, CoreLogic, Stone Point, and Insight Partners jointly announced that they had entered into a proposed transaction:

> IRVINE, Calif. & GREENWICH, Conn.--(BUSINESS WIRE)--CoreLogic® (NYSE: CLGX), a leading global property information, analytics and data-enabled solutions provider, today announced that the company's Board of Directors unanimously approved a definitive merger agreement under which funds managed by Stone Point Capital and Insight Partners will acquire all outstanding shares of CoreLogic for $80 per share in cash, representing an equity value of approximately $6.0 billion and a premium of 51% to CoreLogic's unaffected share price on June 25, 2020.
>
> CoreLogic Chairman Paul Folino said, "This is a significant milestone for CoreLogic and a very positive outcome for our shareholders who will receive exceptional value for their shares in cash with a high degree of regulatory certainty and a closing expected in the near term. The transaction is the culmination of our Board's extensive review of strategic alternatives, which included engaging with numerous potential buyers."
>
> CoreLogic President and CEO Frank Martell said, "Stone Point and Insight Partners are highly respected investors who recognize the value and potential of CoreLogic's digital content, solutions and market-leading platforms that power the housing economy. We look forward to working closely with Stone Point and Insight to build on our record financial and operating performance and accelerate our digital transformation and growth."
>
> Chuck Davis, CEO of Stone Point Capital, said, "CoreLogic is a mission critical vendor and data provider across industry sectors in which Stone Point has specialized over the past 20 years, including mortgage, residential real estate and P&C insurance. CoreLogic's proprietary data assets are increasingly important to its customers, and we look forward to leveraging our network within the broader financial services industry to support the company's next phase of growth."
>
> "At Insight Partners we focus on partnering with clear technology leaders that define and transform their markets through world-class software and data," said Deven Parekh, Managing Director at Insight Partners. "What we found in CoreLogic is a market leader with a long history of serving customers with

powerful data technology and a future vision to innovate across the real estate ecosystem. We are excited to support CoreLogic in its next chapter of transformational growth."

The transaction will be financed through a combination of committed equity financing provided by funds managed by Stone Point Capital and Insight Partners, as well as committed debt financing provided by J.P. Morgan Securities LLC. The transaction is expected to close in the second quarter of 2021 subject to shareholder approval, regulatory approvals, and other customary closing conditions.

Evercore is serving as financial advisor to CoreLogic and Skadden, Arps, Slate, Meagher & Flom LLP is serving as the Company's legal advisor. J.P. Morgan Securities LLC and Wells Fargo Securities, LLC are acting as financial advisor to Stone Point Capital and Insight Partners. Kirkland & Ellis is serving as legal advisor to Stone Point Capital, and Willkie Farr and Gallagher is serving as legal advisor to Insight Partners.

27. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that CoreLogic's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

28. On March 1, 2021, CoreLogic filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning CoreLogic Financial Projections*

29. The Proxy Statement fails to provide material information concerning financial projections by CoreLogic management and relied upon by Evercore in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that CoreLogic management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

30. The Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

31. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

    32.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

    33.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

    34.    With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 8.0% to 9.0%, (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.5% to 3.0%; and (iv) the Company's estimated net debt as of December 31, 2020; and (v) the number of fully diluted shares of Company common stock.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

35. With respect to Evercore's *Premiums Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed by Evercore; and (ii) the premiums paid in each transaction.

36. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the selected public market trading price targets; and (ii) the identities of the equity research analysts observed by Evercore.

37. With respect to Evercore's *Illustrative Leveraged Buyout Analysis*, the Proxy Statement fails to disclose the basis for assuming a required internal rate of return in the range of 18.0% to 22.0%, total leverage ratios in the range of 6.5x to 7.5x to the Company's estimated 2020 Adjusted EBITDA and exit multiples in the range of 11.0x to 15.0x to the Company estimated 2024 Adjusted EBITDA.

38. With respect to the Company's retention of Evercore, the Proxy Statement fails to disclose the amount of fees received by Evercore and its affiliates for their financial advisory services of the Company performed during the two year period prior to the date of the fairness opinion.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Evercore and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of CoreLogic within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of CoreLogic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CoreLogic, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CoreLogic, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 5, 2021

**MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, New York 10036
Telephone: (212) 382-4620

Email: gloria@melwanichan.com

*Attorneys for Plaintiff*